IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ASHLEY FURNITURE INDUSTRIES, )
INC., )
 )
            Plaintiff, )
 )
    v. )  No.  10 C 5413
 )
VALUE CITY FURNITURE, INC., )
 )
            Defendant. )

MEMORANDUM

This Court's brief August 31, 2010 memorandum order that was directed to counsel for plaintiff Ashley Furniture Industries, Inc. ("Ashley") elicited a 14-page September 15 responsive memorandum (together with several attached exhibits).  Counsel for defendant Value City Furniture, Inc. ("Value City") has now weighed in with its Answer and Affirmative Defenses.  This Court's review of the litigants' several filings has occasioned the issuance of this memorandum to apprise the parties of its initial perspective (which, as always, may perhaps call for modification as the case progresses).

Ashley has coupled its charges of misleading competitive activity on Value City's part--a subject as to which this memorandum expresses no substantive view--with some garden variety claims of infringement of its numerous trademarks and service marks (collectively the "Ashley Marks"):  Thus Complaint Count II is labeled "Trademark Infringement under 15 U.S.C. §1114," Count III is labeled "False Designation of Origin and

Unfair Competition under 15 U.S.C. §1125(a)" and Count IV is labeled "Trademark Dilution under 15 U.S.C. §1125(c)." But in candor, it appears clear that those theories of recovery do not withstand scrutiny as thus presented, and indeed they are problematic in terms of the objective good faith demanded of every lawyer and client under Fed. R. Civ. P. ("Rule") 11(b).

For example, it is frankly absurd for Ashley to charge in Count II ¶45 that Value City's use of the Ashley Marks in its competitive advertising "is likely to cause confusion, mistake or deception as to the source of origin of the products offered by Value City, in that customers and potential customers are likely to believe that the furniture products offered for sale by Value City in connection with any of the Ashley marks are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Ashley."[1] No rational reader of Value City's complained-of advertising, and no observer of Value City's side-by-side pictorial depictions of the competing furniture in that advertising, would consider Value City as portraying its furniture as emanating from Ashley-- precisely the opposite is the case.

What has just been said applies with equal force to Ashley's "false designation of origin" contention (Count III ¶53). Again

---

[1] Count II ¶46 advances a similarly bizarre confusion-of-source allegation.

no rational "customers and potential customers are likely to believe that such products [those expressly identified as Value City products in its advertising] are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some was [sic] legitimately connected to Ashley" (id.).

Lastly, it makes no sense to anyone familiar with the concept of trademark or service mark dilution to assert, as Count IV ¶58 does, that Value City's accurate use of the Ashley Marks in direct juxtaposition to actual Ashley products "causes and/or is likely to cause dilution by blurring the Ashley marks by impairing the distinctiveness of the Ashley marks." Indeed, it strikes this Court as particularly ironic that a lawsuit whose gravamen is assertedly false and misleading advertising appears to present theories of recovery that are vulnerable to the same characterization.

That said, this Court is not striking those troublesome counts sua sponte.[2] It should be emphasized once again that what has been said here suggests no view as to the viability of Ashley's claims of disparagement or the like, or as to Ashley's

---

[2] Although the practice of employing separate counts merely to advance different theories of recovery is so deeply entrenched as to defy a return to the limited role prescribed by Rule 10(b)'s final sentence, this case is typical of so many others that demonstrate the wisdom of the teaching in NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 291-93 (7th Cir. 1992) and Hatmaker v. Memorial Med. Ctr., No. 09-3002, 2010 WL 3385191, at *1 (7th Cir. July 22).

entitlement to pursue its claims in this federal court (after all, even if Counts II, III and IV were to be eliminated from the Complaint, what has been termed the federal law of unfair competition embodied in Lanham Act §43(a), 15 U.S.C. §1125(a), would open the doors of the federal courthouse to Ashley).

As should be apparent from its nature, this expression of views has been captioned "Memorandum" rather than "Memorandum Order." This Court expects to see counsel for the parties at the status hearing previously set for 9 a.m. October 29, 2010.

_____
Milton I. Shadur
Senior United States District Judge

Date: September 27, 2010